## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AMCAD HOLDINGS, LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 14-12168 (MFW)<br><br>(Jointly Administered) |
| Gavin/Solmonese LLC, as Liquidating Trustee of the Amcad Creditors' Liquidating Trust,<br><br>Plaintiff,<br><br>vs.<br><br>Codifyd, Inc.,<br><br>Defendant. | Adv. No. **Refer to Summons** |

## COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548 AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502

Gavin/Solmonese LLC, as Liquidating Trustee of the Amcad Creditors' Liquidating Trust (the "Trustee" or "Plaintiff"), by and through its undersigned counsel, files this complaint (the "Complaint") to avoid and recover transfers against Codifyd, Inc. (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges upon information and belief that:

### NATURE OF THE CASE

1.      Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the bankruptcy proceedings of AmCad Holdings, LLC and its affiliated debtors and debtors in possession

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each entity's federal tax identification number, are: AmCad Holdings, LLC (4731) and American Cadastre, L.L.C. (0897). The corporate headquarters and the mailing address for each entity listed above is 13650 Dulles Technology Drive, Suite 400, Herndon, VA 20171.

(collectively, the "Debtors")[2] pursuant to sections 547 and 550 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Subject to proof, Plaintiff also seeks to avoid and recover from Defendant or any other person or entity for whose benefit transfers were made pursuant to sections 548 and 550 of the Bankruptcy Code any transfers that may have been fraudulent conveyances.

2.      In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of its rights and the rights of the Debtors to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction over this adversary proceeding, which arises under title 11, arises in, and relates to cases under title 11, in the United States Bankruptcy Court for the District of Delaware (the "Court"), captioned *In re AmCad Holdings, LLC, et al.,* Case No. 14-12168 (MFW), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4.      The statutory and legal predicates for the relief sought herein are sections 502, 547, 548 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5.      This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

6.      Venue is proper in the District of Delaware pursuant to 28 U.S.C. § 1409.

---

[2] The "Debtors" are all entities listed in footnote 1.

7.     Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that it does consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8.     On September 19, 2014 (the "Petition Date") the Debtors each commenced a case by filing a voluntary petition for relief in this Court under chapter 11 of the Bankruptcy Code.

9.     On September 23, 2014, the Court entered an order authorizing the joint administration of the chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b) [D.I. 26].[3]

10.     On August 11 2015, this Court entered an order confirming the *Modified Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors* (the "Confirmation Order" and "Plan," respectively). [Confirmation Order, D.I. 545; Plan, D.I. 533].

11.     The effective date of the Plan (the "Effective Date") occurred on August 19, 2015. [D.I. 549]. In accordance with the Plan and Confirmation Order, the Amcad Creditors' Liquidating Trust (the "Trust") was established on the Effective Date of the Plan, and the Debtors and the Trustee entered into that certain Amcad Creditors' Liquidating Trust Agreement.

12.     Pursuant to Article III, Section B of the Plan, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

---

[3] All docket items referenced are from Case No. 14-12168, under which the bankruptcy cases are jointly administered.

**THE PARTIES**

13.     Pursuant to Article IV, Section D of the Plan, on the Effective Date, the Liquidating Trust Assets,[4] including Avoidance Actions and other causes of action arising under chapter 5 of the Bankruptcy Code, were transferred and assigned to the Trust. The Trustee was appointed to administer the Trust. Plaintiff is authorized and has standing, among other things, to commence, prosecute, settle, abandon or compromise this avoidance action.

14.     Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided product content services and solutions from initial strategy through design, implementation and ongoing product content governance to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 303 E. Wacker Drive, Suite 950, Chicago, IL 60601.  Plaintiff is informed and believes and on that basis alleges that Defendant is a corporation residing in and subject to the laws of the State of Illinois.

**FACTUAL BACKGROUND**

15.     As more fully discussed in the *Declaration of Patrick Conley in Support of Chapter 11 Petition and First Day Motions*[5] and the disclosure statement filed in support of the Plan,[6] Debtor American Cadastre, L.L.C. ("AMCAD") provided software solutions and products catering to the information technology needs of county, city, and state governments. AMCAD offered four lines of products and services: (i) the justice platform (the "Justice Business"), which involved developing case-management systems for state and local judiciaries; (ii) the government land records platform, which allowed government agencies to automate land and

---

[4] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan and Confirmation Order.
[5] D.I. 5.
[6] D.I. 488.

vital records; (iii) document management services, which services provided support for the conversion of historical records; and (iv) data access and e-filing technologies, which involved software providing electronic court filing solutions. This software was primarily sold as part of the Justice Business. AMCAD was a wholly-owned subsidiary of Debtor AmCad Holdings, LLC ("HoldCo").

16.     Prior to the Petition Date, AMCAD, as a provider and developer of government software products and services, maintained business relationships with various business entities, through which AMCAD regularly purchased, sold, received, and/or delivered goods and services.

17.     As a provider and developer of government software products and services, AMCAD regularly purchased goods from various entities including vendors, creditors, suppliers and distributors. AMCAD also regularly paid for services used to facilitate its business.

18.     The Debtors' financial difficulties that led to the decision to file the Bankruptcy Case are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. These factors included, among other things: (i) the failure of the Justice Business to achieve project milestones on multiple projects for several years leading up to the Petition Date, which caused negative cash flows as Justice Business customers held back payments on projects; (ii) the termination of a key Justice Business contract in early June of 2014, which resulted in AMCAD's decision to cease all Justice Business in June 2014; (iii) multiple lawsuits filed by government entities after the Justice Business program was ended; and (iv) a lawsuit filed by NGM Insurance Co. in August of 2014, seeking indemnification against potential obligations arising under performance bonds issued by NGM with regard to certain Justice Business projects. As documented in the schedules

filed by AMCAD,[7] as of the Petition Date, AMCAD's liabilities far exceeded its assets. Further, the notes to the schedules indicate that a significant portion of the receivables listed on the schedules as assets are likely uncollectible.

19.     As of the Petition Date, AMCAD utilized an integrated cash management system (the "Cash Management System") for the operation and administration of AMCAD's business. The Cash Management System included various bank accounts maintained at Capital Bank, N.A., including an operating account ending XXXX5711 (the "Operating Account"), a reserve account, a payroll account, an e-commerce account, and an e-filing account. The Operating Account was AMCAD's main account, and was used to fund checks written and issued by AMCAD and to initiate wire transfers to AMCAD's vendors.

20.     During the ninety (90) days before the Petition Date, that is between June 21, 2014, and September 19, 2014 (the "Preference Period"), AMCAD continued to operate its business affairs, including the transfer of property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits or otherwise to various entities.

21.     Upon information and belief, during the course of their relationship, AMCAD and Defendant entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to AMCAD as described in the "Parties" section of this Complaint. The details of each of the Agreements paid for during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

22.     AMCAD and Defendant conducted business with one another through and including the Petition Date pursuant to the Agreements.

---

[7] D.I. 77.

23.     As identified in the Agreements identified on <u>Exhibit A</u>, AMCAD purchased goods and/or services from Defendant.

24.     Plaintiff has completed an analysis of all readily available information of the Debtors and is seeking to avoid all of the transfers of an interest of AMCAD's property made by AMCAD to Defendant within the Preference Period.

25.     Plaintiff has determined that AMCAD made transfer(s) of an interest of AMCAD's property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than $46,322.54 (the "<u>Transfer</u>" or "<u>Transfers</u>"). The details of each Transfer are set forth on <u>Exhibit A</u> attached hereto and incorporated by reference. Such details include "Check Number," "Check Amount," "Check Clear Date," and "Debtor Transferor(s)."

26.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves its right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action (*e.g.*, but not exclusively, 11 U.S.C. §§ 542, 544, 545, and/or 549) (collectively, the "<u>Amendments</u>"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

27.     Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

28.     During the Preference Period, AMCAD made Transfers to or for the benefit of Defendant in an aggregate amount not less than $46,322.54.

29.     Each Transfer was made to or for the benefit of Defendant by AMCAD.

30.     Each Transfer was paid from the Operating Account described *supra,* and constituted transfers of an interest in property of AMCAD.

31.     Defendant was a creditor of AMCAD at the time of each Transfer by virtue of supplying goods and/or services identified in this Complaint and in the Agreements to AMCAD, as identified on Exhibit A under the column heading "Debtor(s) Incurring Antecedent Debt," for which AMCAD was obligated to pay following delivery in accordance with the Agreements. See Exhibit A.

32.     Each Transfer was to or for the benefit of a creditor within the meaning of 11 U.S.C. § 547(b)(1) because each Transfer either reduced or fully satisfied a debt or debts then owed by AMCAD to Defendant.  See Exhibit A.

33.     Each Transfer was made for, or on account of, an antecedent debt or debts owed by AMCAD to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by AMCAD. See Exhibit A.

34.     Each Transfer was made while AMCAD was insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to 11 U.S.C. § 547(f).

35.     Each Transfer was made during the Preference Period. See Exhibit A.

36.     As a result of each Transfer, Defendant received more than Defendant would have received if: (i) AMCAD's case were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by AMCAD's schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, AMCAD's liabilities exceed it assets to the point that unsecured creditors will not receive a full payout of their claims from the AMCAD's bankruptcy estate.

37.     In accordance with the foregoing, each Transfer is avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II
### (Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

38.     Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

39.     To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, or was a prepayment for goods and/or services subsequently received, and/or was a debt incurred by HoldCo but paid by AMCAD, Plaintiff pleads in the alternative that AMCAD did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

A.     AMCAD was insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

9

B.      AMCAD was engaged, or about to engage, in business or a transaction for which any property remaining with AMCAD or for whose benefit the Transfer(s) was made was an unreasonably small capital; or

C.      AMCAD intended to incur, or believed it would incur, debts beyond its ability to pay upon maturity.

40.      Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to 11 U.S.C. § 548(a)(1)(B).

## COUNT III
### (Recovery of Avoided Transfers – 11 U.S.C. § 550)

41.      Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

42.      Plaintiff is entitled to avoid the Transfer(s) pursuant to 11 U.S.C. § 547(b) and/or any Potentially Fraudulent Transfers pursuant to 11 U.S.C. § 548 (collectively, the "Avoidable Transfers").

43.      Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

44.      Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT IV
### (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

45.      Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Count.

46.     Defendant is a transferee of transfers avoidable under section 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

47.     Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under 11 U.S.C. § 550.

48.     Pursuant to 11 U.S.C. § 502(d), any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

49.     Pursuant to 11 U.S.C. § 502(j), any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant him the following relief against Defendant:

    A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to 11 U.S.C. §§ 547(b) and/or 548 and 550(a), plus interest from the date of demand at the maximum legal rate and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B.  On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against
    Defendant disallowing any claims held or filed by Defendant against the Plaintiff
    until Defendant returns the Avoidable Transfers to Plaintiff pursuant to 11 U.S.C.
    § 502(d) and (j); and

C.  Granting Plaintiff such other and further relief as this Court may deem just and
    proper.

Dated: September 14, 2016

THE ROSNER LAW GROUP LLC

*/s/ Scott J. Leonhardt___*
Frederick B. Rosner (DE 3995)
Scott J. Leonhardt (DE 4885)
Jason A. Gibson (DE 6091)
824 Market Street, Suite 810
Wilmington, DE 19801
Telephone: (302) 777-1111
Email: rosner@teamrosner.com
        leonhardt@teamrosner.com
        gibson@teamrosner.com

*-and-*

Joseph L. Steinfeld, Jr., Esq., MN SBN 0266292
Kara E. Casteel, Esq., MN SBN 0389115
(*Admitted Pro Hac Vice*)
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: (651) 406-9665  ext. 846
Fax: (651) 406-9676
Email: kcasteel@askllp.com

*-and-*

Edward E. Neiger, Esq.
Brigette G. McGrath, Esq.
151 West 46th Street, 4th Fl.
New York, NY  10036
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for Gavin/Solmonese LLC, as Liquidating*
*Trustee of the Amcad Creditors' Liquidating Trust*